******************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* TYRAN SAMPSON
(AC 37925)

Lavine, Beach and Flynn, Js.

*Syllabus*

Convicted of the crime of interfering with an officer, as a lesser offense included within the crime of assault of public safety personnel, the defendant appealed to this court. The defendant was a passenger in a vehicle driven by his brother that nearly collided with a police officer who was responding to a report of a robbery in East Hartford, and they were later involved in a police pursuit involving officers from the Hartford and East Hartford Police Departments. After the vehicle stopped, the driver fled, and two police officers, O and P, approached the passenger side of the vehicle and ordered the defendant to exit the vehicle. The defendant did not obey the order and, instead, engaged in a struggle with police during which he kicked P in the right forearm. The defendant was eventually removed from his vehicle and secured in handcuffs. *Held*:

1. The defendant could not prevail on his claim that the trial court violated his constitutional right to confrontation by granting the state's motion in limine to exclude certain evidence relating to counseling received by O in connection with an arrest report she had written previously in an unrelated case, which the defendant claimed could have been used to impeach O's testimony; that court's ruling that the evidence was not relevant was not an abuse of discretion, as the excluded evidence concerned verbal counseling and training received by O regarding how to write more detailed police reports and, thus, had no relation to the ability or propensity of O to tell the truth, nor did it relate to the issue of whether the defendant had kicked P.

2. The trial court did not abuse its discretion or violate the defendant's right to present a defense by finding inadmissible certain testimony of three police officers concerning the details of the police investigation into the robbery in East Hartford, police radio dispatches during the pursuit, and information about the charges brought against the defendant's brother arising out of his conduct in driving the vehicle involved in the pursuit, which the defendant claimed would have demonstrated that the police officers had acted unreasonably and in excess of their authority, and therefore was relevant to the issue of the reasonableness of the force used by P in arresting the defendant: the excluded testimony related to a collateral issue that was not directly relevant to the elements of the crime charged against the defendant or the lesser included offense, did not tend to prove or to disprove any element of the offense, and was not relevant to the issue of the reasonableness of P's use of force; moreover, because the essence of the defendant's defense, which was the reasonableness of P's use of force, was before the jury, the court did not improperly limit the defendant's ability to present the defense.

Argued January 10—officially released July 18, 2017

(Appeal from Superior Court, judicial district of New Britain, geographical area number fifteen, D'Addabbo, J.)

*Procedural History*

Substitute information charging the defendant with the crimes of assault of public safety personnel and failure to appear in the first degree, brought to the Superior Court in the judicial district of New Britain, geographical area number fifteen, where the court, *D'Addabbo, J.*, granted the defendant's motion to sever the charge of failure to appear; thereafter, the court granted the state's motion in limine to preclude certain

evidence; subsequently, the charge of assault of public safety personnel was tried to the jury before the court; verdict and judgment of guilty of the lesser included offense of interfering with an officer, from which the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Duby*, assigned counsel, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, was *Brian Preleski*, state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Tyran Sampson, appeals from the judgment of conviction, rendered after a jury trial, of interfering with an officer in violation of General Statutes § 53a-167a. The defendant claims that the trial court violated (1) his right to confrontation by excluding certain impeachment evidence as to a state's witness and (2) his right to present a defense by prohibiting the introduction of certain testimony. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 10, 2012, at approximately 9:52 p.m., Daniel Caruso, a sergeant with the East Hartford Police Department, responded to a report of an armed robbery at the Family Dollar store in East Hartford. While en route to the scene, a Toyota Camry crossed into his lane of travel and Caruso swerved to avoid a collision. Caruso's attempt to stop the Camry was unsuccessful. He was able to provide the department with a description of the vehicle and its license plate number. The police were able to determine the address of the person who had rented the Camry. When Caruso arrived at that address, he saw the Camry drive by and pursued the vehicle again. Paul Neves, a sergeant with the East Hartford Police Department, and other East Hartford police officers also responded to the address after being notified by dispatch that the address belonged to the renter of the Camry. Caruso followed the Camry, but stopped the pursuit when the Camry entered Interstate 84 traveling in the wrong direction.

At approximately 10:27 p.m., officers with the Hartford Police Department picked up the pursuit of the Camry. The pursuit concluded when police officers deployed stop sticks that disabled the vehicle. The defendant was in the front passenger seat of the Camry, and D'Amico Sampson, the defendant's brother, had been driving the car. The defendant and his brother were suspected by the police to have engaged in the armed robbery in East Hartford earlier that evening.[1]

Once the vehicle stopped, the driver exited the vehicle and fled on foot, while the defendant remained in the passenger seat. Tonya Ortiz and Anthony Pia, officers with the Harford Police Department, approached the passenger side of the vehicle and ordered the defendant to exit the vehicle. The defendant did not comply with the order.

Pia opened the passenger door and noticed the defendant leaning toward the driver's side of the car "as if he was trying to get over to the driver's side either to get away or get into the driver's seat of the car." In response, Pia pulled on the defendant's shirt. As the defendant continued to reach toward the driver's side, Ortiz gave him "a couple foot strikes" in order to get him to release his hand from the steering wheel and

center shift. The defendant broke away, and kicked Pia in the right forearm. The defendant continued to struggle with Pia and tried to take Pia's gun. Pia struck the defendant in the forehead; he then was able to remove the defendant from the vehicle. The defendant began "violently thrashing, twisting his body on the ground, resisting arrest." The officers tried to place the defendant in handcuffs and, after a struggle, the defendant was finally secured in handcuffs. The defendant began shouting that he was "going to beat the case" and that he had been drinking.

Following a jury trial, the defendant was convicted of interfering with an officer.[2] He was sentenced to one year incarceration, consecutive to a sentence he was then serving.[3] This appeal followed.

I

The defendant first claims that the court violated his right to confrontation[4] in granting the state's motion in limine to exclude certain evidence that he claimed would have impeached Ortiz' testimony. We disagree.

Prior to the presentation of evidence, the state filed a motion in limine seeking to limit the scope of the cross-examination of its witness, Ortiz, regarding internal affairs materials of the Hartford Police Department that the state had disclosed to the defense. The state argued that the materials could not properly be used for impeachment purposes because the materials did not relate to Ortiz' veracity. At issue was a letter from a sergeant of the Hartford Police Department to the prosecutor indicating that the department's computer system revealed counseling that Ortiz had received in 2009 concerning an arrest report that she had written. Although probable cause had existed for the arrest, Ortiz was counseled to include more details in her reports. Defense counsel reported receiving an additional memorandum about the counseling as well. Defense counsel maintained that the defendant did not kick Pia, and that testimony of Ortiz to the contrary could more properly be evaluated by the jury if it had the benefit of the arguably impeaching information. The court allowed voir dire of Ortiz prior to ruling.

Outside the presence of the jury, Ortiz testified that in April, 2009, she received verbal counseling regarding an arrest report that did not contain enough information. She testified that the counseling was not disciplinary, there was no concern about the truthfulness of the report, and that the arrest itself had been valid. She further testified that, as a result of the counseling, she went to a one day training program on report writing. The state argued that the matter was not a proper subject for cross-examination because the counseling was not disciplinary in nature and did not relate to Ortiz' ability or propensity to tell the truth. The defendant's attorney argued that the counseling was disciplinary in

nature and, even if it were not, a history of writing police reports in a negligent manner was relevant to her ability to tell the truth. The court granted the motion in limine, reasoning that the incident did not reflect on Ortiz' veracity, but rather concerned her report writing ability at a time when she had been on the police force for less than two years.[5]

At trial, Ortiz testified that she approached the passenger side of the vehicle after it had stopped. She saw the defendant reach for the steering wheel and Pia attempt to remove the defendant from the vehicle. She saw the defendant kick Pia. She testified that she kicked the defendant after the defendant kicked Pia. She noted that the defendant continued to struggle. On cross-examination, she testified that she had developed strong relationships with her fellow officers, that police culture valued solidarity, and that her ability to see during the event was hampered by dust, dirt, and smoke in the air.

"Generally speaking, the Confrontation Clause[6] guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . The proffering party bears the burden of establishing the relevance of the offered testimony." (Citations omitted; footnote added; internal quotation marks omitted.) *State* v. *Reeves*, 57 Conn. App. 337, 344–45, 748 A.2d 357 (2000).

"Under the abuse of discretion standard we make every reasonable presumption in favor of upholding the trial court's rulings, considering only whether the court reasonably could have concluded as it did. . . . If, after reviewing the trial court's evidentiary rulings, we conclude that the trial court properly excluded the proffered evidence, then the defendant's constitutional claims necessarily fail. . . . If, however, we conclude that the trial court improperly excluded certain evidence, we will proceed to analyze [w]hether [the] limitations on impeachment, including cross-examination, [were] so severe as to violate [the defendant's rights under] the confrontation clause of the sixth amendment . . . ." (Citation omitted; internal quotation marks

omitted.) *State* v. *Annulli*, 309 Conn. 482, 491–92, 71 A.3d 530 (2013).

The issue, then, is whether the court abused its discretion in excluding the evidence showing that Ortiz had received counseling regarding report writing. The defendant argues that the court's ruling prohibited him from placing relevant impeachment material before the jury. The defendant argues that the material was relevant because it related to Ortiz' ability to report an incident accurately. We do not agree.

The excluded evidence concerned verbal counseling and training received by Ortiz regarding how to write more detailed police reports. The court was justified in finding that the evidence had no relation to the ability or propensity of Ortiz to tell the truth, and certainly had nothing to do with the question of whether the defendant had kicked Pia. The counseling and training pertained only to her ability to write *factually* detailed police reports. Accordingly, the court did not abuse its discretion in precluding evidence regarding counseling received by Ortiz concerning report writing. Compare § 6-6 of the Connecticut Code of Evidence (inquiry into specific instances of conduct probative of witness' character for untruthfulness permitted). Having concluded that the trial court did not abuse its discretion in determining that the evidence was not relevant, this court concludes that the defendant's constitutional claim necessarily fails.[7] See *State* v. *Annulli*, supra, 309 Conn. 492 n.6.

II

The defendant next claims that the court deprived him of his right to present a defense by finding inadmissible certain testimony of three East Hartford Police Officers, Jason Cohen, Neves and Caruso. He argues that one theory of defense was aimed at the requirement that, to be found guilty of interfering with an officer in violation of § 53a-167a, the officer must have been acting "in the performance of his duties." The defendant claims that evidence tending to show that the Hartford police were acting unreasonably and in excess of their authority was improperly excluded. More specifically, he claims that the court's rulings excluding testimony about the investigation of the East Hartford robbery, aspects of the various pursuits, and other crimes for which the police may have suspected the defendant and his brother were erroneous. We disagree.

Cohen testified to the jury that on the night of June 10, 2012, he was assigned to investigate a robbery at the Family Dollar store in East Hartford. The state objected to this line of questioning. Outside the presence of the jury, the state argued that details of the investigation of the East Hartford robbery were not relevant to the crimes charged, which directly involved only the confrontation between the Hartford officers

and the defendant in Hartford. Cohen testified, in an offer of proof, that after investigating the robbery at the Family Dollar store by interviewing witnesses, reviewing phone records and examining surveillance footage, he determined that one suspect was approximately five feet two inches tall and the other suspect was approximately five feet five inches tall. He further testified that his investigation cleared the operator and passenger of the Camry that was stopped on the night of June 10, 2012, as suspects in the robbery.

The court ruled that the details of the investigation pertained to a collateral issue that was not directly relevant to the elements of the crime charged, but ruled that Cohen would be permitted to testify that the defendant and his brother were cleared as suspects in the robbery. In the presence of the jury, then, Cohen testified that the defendant and his brother were eliminated as suspects in the Family Dollar store robbery.

Prior to the testimony of Neves and Caruso before the jury, the defendant's attorney made an offer of proof as to certain testimony he wanted to elicit from the officers. Neves testified about his involvement in the pursuit of the Camry by East Hartford police.[8] He stated that he monitored Caruso's chase of the vehicle on his radio and that Caruso described the vehicle as a white Toyota Camry and provided its license plate number. Neves further testified that, while monitoring the radio in his police cruiser, he heard a Hartford Police Department dispatch indicating that Hartford police officers had begun pursuit of the Camry after East Hartford police suspended their pursuit. He heard that the vehicle in question was also suspected of having been involved in a robbery in Hartford. After East Hartford police dispatch informed Hartford police dispatch that the vehicle was also suspected of a robbery in East Hartford, East Hartford dispatch then so informed Neves. The following day, Neves spoke with the communications supervisor at the East Hartford Police Department and listened to dispatches between the Harford and East Hartford Police Departments and between the East Hartford police dispatcher and himself.

Caruso testified in the offer of proof that at 9:52 p.m. on June 10, 2012, he learned through police dispatch that there had been a report of a robbery at the Family Dollar store in East Harford. He described his near collision with the Camry and his pursuit of the vehicle. He testified that Sampson, the operator of the vehicle and the defendant's brother, was arrested and charged with operating a motor vehicle while his license was under suspension, reckless driving, engaging police in pursuit, illegal entry onto a limited access highway, interfering with an officer and reckless endangerment in the first degree for placing the passenger in danger. Caruso further testified that the victims of the Family Dollar store robbery were unable to identify the perpe-

trator and that Sampson denied involvement in the robbery. He further testified that he, himself, had no direct involvement with the defendant that evening.

At the conclusion of the offer of proof, the state objected to Neves' testimony concerning the dispatches on the ground that it constituted irrelevant hearsay. The state objected to Caruso's testimony concerning the events surrounding the exculpation of the defendant and Sampson from the robbery on the ground of relevancy. The court ruled that the testimony of Neves, and Caruso regarding the investigation into the robbery and ultimate exculpation of the defendant and Sampson from the robbery was irrelevant because it would not assist the trier of fact in determining whether the state had met the elements of the crime of assault of public safety personnel or the lesser included offense of interfering with an officer. The court further reasoned that, in any event, the results of the robbery investigation were already in evidence. The court sustained the state's objection to all of Neves' testimony regarding the ultimately mistaken information regarding the defendant's possible involvement in the robbery in Hartford, reasoning that it was not relevant and was hearsay. The court further ruled that Caruso's testimony regarding the charges brought against Sampson was not relevant.

"[T]he federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . When defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes." (Citation omitted; internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 624–25, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).

Section 4-1 of the Connecticut Code of Evidence provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." "As it is used in [the Connecticut Code of Evidence], relevance encompasses two distinct concepts, namely, probative value and materiality. . . . Conceptually, relevance addresses whether the evi-

dence makes the existence of a fact material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . In contrast, materiality turns upon what is at issue in the case, which generally will be determined by the pleadings and the applicable substantive law. . . . If evidence is relevant and material, then it may be admissible." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Zillo*, 124 Conn. App. 690, 696–97, 5 A.3d 996 (2010). "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 272 Conn. 515, 542, 864 A.2d 847 (2005).

The defendant argues that the excluded testimony of Cohen, Neves and Caruso was relevant to the issue of the reasonableness of the force used by Pia in arresting the defendant, and that he was entitled to the jury's consideration of evidence relevant to that issue. Specifically, the defendant claimed that if Pia's use of force was unreasonable, his actions were not within the scope of his duties, and, as a result, the defendant could not be guilty of assault of public safety personnel.[9] The defendant also argues that the radio dispatches from East Hartford police officers about the robbery investigation were not hearsay because they were offered for the effect on the listener, not for the truth of the matter asserted.[10] He contends that it would have been reasonable for the finder of fact to assume, on the basis of the dispatches, that the Hartford police officers were aware of the reported height of the robbery suspects, which was shorter than the defendant's height,[11] and for the police officers to have assumed, mistakenly, that the suspects were armed. He argues that this evidence tends to show that Pia, acting on incorrect information, unreasonably pursued what he incorrectly thought was a dangerous perpetrator of an armed robbery and, thus, that Pia was not acting in the performance of his duties.[12]

The court did not abuse its discretion in excluding testimony concerning the radio dispatches. Neves testified during the offer of proof that he heard radio dispatches indicating that Hartford police continued pursuit of the vehicle after East Hartford police ended their pursuit, and that the vehicle was also suspected to have been involved in a Hartford robbery. The effect, if any, that the dispatches had on the listener, Neves, who was not involved in the struggle with the defendant, was not relevant to the reasonableness of Pia's use of force. More fundamentally, there was no direct evidence that Pia heard the same dispatches. The defendant introduced, through cross-examination of Pia, the

essence of the radio dispatches that Pia had heard, which showed that Pia had reason to believe that East Hartford police had been pursuing the vehicle because of a possible connection with an East Hartford armed robbery. Pia, however, testified that he did not remember receiving a radio dispatch stating that the vehicle was also suspected of having been involved in a Hartford robbery.

We also conclude that the court did not abuse its discretion in ruling that Cohen's testimony about the details of the investigation of the East Hartford robbery was not relevant. The testimony setting forth the details of Cohen's investigation pertained to a collateral issue that did not tend to prove or to disprove any element of the charged offense or any element of the lesser included offense. His investigation occurred *after* the defendant's arrest, and, therefore, could not have been a factor influencing Pia's actions on the night of the arrest. Cohen, Caruso and Neves never testified that the height of the robbery suspects was included in the radio dispatches, and a reasonable inference could not be drawn that Pia heard a radio dispatch containing that information. Cohen, in fact, was permitted to testify that the defendant and Sampson were later eliminated as suspects in the East Hartford robbery.

The court did not abuse its discretion in concluding that information about the charges brought against Sampson arising out of his actions as the driver of the Camry was not relevant. There was evidence before the jury as to the details of the pursuit of the Camry through East Hartford and Hartford. The charges brought against Sampson did not tend to prove or to disprove any element of the crime charged against the defendant, or of the lesser included offense, nor did it have any tendency to prove or disprove the reasonableness of the force used by Pia.

For the foregoing reasons, we determine that the court did not abuse its discretion in ruling that portions of the proffered testimony of Cohen, Neves, and Caruso were not relevant. The essence of the defense—the reasonableness of Pia's use of force—was before the jury and the court did not improperly limit the defendant's ability to present the defense. Accordingly, we conclude that the defendant's right to present a defense was not violated.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant and his brother later were determined by police not to have had any involvement with the East Hartford robbery.

[2] The jury found the defendant not guilty of the greater offense of assault of public safety personnel in violation of General Statutes § 53a-167c (a) (1).

[3] The defendant was sentenced to five years incarceration and four years of special parole for violation of probation as a further consequence of his conviction.

[4] The defendant makes this claim pursuant to both the federal and state constitutions. Because the defendant did not provide a separate analysis of

the state constitutional claim under *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), we will review the defendant's claim only under the federal constitution. See, e.g., *Barros* v. *Barros*, 309 Conn. 499, 507 n.9, 72 A.3d 367 (2013).

[5] The constitutional claim was not preserved at trial, but we review the matter pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The record is adequate for review, but the defendant was not deprived of a constitutionally protected right.

[6] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[7] We note that the defendant effectively cross-examined Ortiz on several topics, including her desire to support her colleagues and her compromised ability to observe the incident. We also note that the jury found the defendant not guilty of the charge of assault of public safety personnel.

[8] Neves and Caruso testified during their respective offers of proof regarding the details of the pursuit of the Camry by East Hartford police. The state did not object to the admission of this evidence, and evidence of the details of the pursuit of the vehicle by East Hartford police officers was admitted into evidence.

[9] The lesser offense of interfering with an officer, § 53a-167a (a), of which the defendant was convicted, provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . *in the performance of such peace officer's . . . duties*." (Emphasis added.)

[10] "Statements of declarants offered to show their effect on the listener, not for the truth of the contents of the statements, are not hearsay and are admissible." *Dinan* v. *Marchand*, 279 Conn. 558, 572, 903 A.2d 201 (2006).

[11] The defendant testified that he is six feet one inch tall.

[12] We have some difficulty in fathoming the defendant's theory. He does not contest that the Hartford police pursued the defendant and his brother, who refused to pull over, in a wild chase that ended only by the use of stop sticks. The defendant's brother fled on foot, leaving the defendant in the car. The defendant did not follow the officer's orders but, rather, engaged in elusive tactics and struck an officer. The defendant was free to introduce evidence regarding the amount of force that the officers used.