******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* PAUL WYNNE
(AC 39169)

Sheldon, Bright and Harper, Js.

*Syllabus*

Convicted of the crime of operating a motor vehicle while under the influence of intoxicating liquor or drugs, the defendant appealed to this court. He claimed that the evidence was insufficient to support his conviction and that the trial court abused its discretion in admitting the testimony of E, the state's expert on drug recognition. *Held*:

1. The evidence was sufficient to support the defendant's conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs: the arresting police officer testified that he observed the defendant having difficulty maintaining his lane and crossing over the fog line several times while driving, that he noticed the smell of alcohol and marijuana when the defendant lowered his passenger side window and that the defendant was speaking slowly and in a monotone voice, the defendant admitted that he had consumed two beers and smoked marijuana prior to driving, and he was unsteady on his feet after he exited his vehicle and could not keep his balance, exhibited seven out of eight clues indicative of impairment during the walk and turn test, exhibited three out of four clues of impairment during the one leg stand test, and exhibited a lack of smooth pursuit during the horizontal gaze nystagmus test; moreover, the evidence showed that the officer asked the defendant if he had any physical ailments or injuries that would have prevented him from performing the field sobriety tests, to which the defendant responded negatively, and the jury was not required to accept the defendant's view that there could have been explanations other than intoxication for his poor performance on the tests or that evidence of his cooperation throughout the process proved that he was not intoxicated.

2. The defendant could not prevail on his claim that the trial court abused its discretion in admitting E's testimony, which was based on his claim, inter alia, that the trial court improperly failed to conduct a hearing pursuant to *State* v. *Porter* (241 Conn. 57) prior to admitting E's testimony: the defendant having failed to raise his *Porter* claim before the trial court or in his motion in limine, the claim was not preserved for appellate review, and under the circumstances here, where E was not being offered to testify as to the defendant's level of intoxication, but was offered only to explain the combined effects of marijuana and alcohol on a driver, which was not improper, the trial court's failure to conduct a *Porter* hearing sua sponte on the facts of this case was not the type of extraordinary situation for which plain error review is reserved; moreover, the trial court did not abuse its discretion in determining that E's testimony was relevant, as E testified regarding the physical effects of marijuana on the body and the effects that the combination of marijuana and alcohol could have on a person's performance of field sobriety tests, which in no way required personal observation of the defendant to be relevant; furthermore, the defendant's claim that the trial court improperly permitted E to answer a hypothetical question was not reviewable, as the defendant did not state the basis for his general objection to the hypothetical question, which denied the trial court the opportunity to consider the arguments now made by the defendant on appeal, and his unpreserved evidentiary claim that the trial court improperly permitted E to estimate a blood alcohol content equivalent based on a person's use of marijuana in conjunction with alcohol was not reviewable pursuant to *State* v. *Golding* (213 Conn. 233), as the claim was not of constitutional magnitude, nor did the defendant demonstrate that the claimed error was both so clear and so harmful that reversal was required under the plain error doctrine.

Argued February 8—officially released June 19, 2018

*Procedural History*

Substitute information charging the defendant with the crime of operating a motor vehicle while under the influence of intoxicating liquor or drugs and the infraction of failure to drive in the proper lane, brought to the Superior Court in the judicial district of Stamford-Norwalk, geographical area number twenty, where the charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs was tried to the jury before *Hernandez, J.*; verdict of guilty; thereafter, the infraction of failure to drive in the proper lane was tried to the court; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*James B. Streeto*, senior assistant public defender, with whom was *Christopher M. Shea*, certified legal intern, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Richard J. Colangelo, Jr.*, state's attorney, and *Justina Moore*, assistant state's attorney, for the appellee (state).

*Opinion*

BRIGHT, J. The defendant, Paul Wynne, appeals from the judgment of conviction, rendered following a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both in violation of General Statutes § 14-227a (a) (1). The defendant claims that (1) the evidence was insufficient to support his conviction; and (2) the court abused its discretion in admitting the testimony of the state's expert on drug recognition. We affirm the judgment of the trial court.

The jury was presented with the following evidence on which to base its verdict. On September 6, 2014, at approximately 9:43 p.m., while Trooper Joel Contreras of the state police was patrolling a portion of the Interstate 95 southbound corridor, he observed that the driver of a Nissan pickup truck (vehicle) was "having difficulty maintaining [his] lane" and that he had "cross[ed] into the fog line several times." Contreras followed the vehicle, and the driver of the vehicle continued to drive in a similar manner. As the two vehicles approached the area of exit eighteen, Contreras activated his cruiser's emergency lights and sirens and initiated a traffic stop. Contreras exited his cruiser and knocked on the passenger window of the vehicle. The defendant, the sole occupant and operator of the vehicle, lowered the passenger window. Contreras immediately noticed the smell of alcohol and marijuana. Contreras then asked the defendant for his driver's license, his vehicle's registration, and his insurance card, and he asked the defendant to what location he was driving. The defendant explained that he was going home to Norwalk. Contreras noticed that the defendant was speaking slowly and in a monotone voice. Contreras also noticed that the vehicle was stopped in an unsafe spot in a curve and asked the defendant to drive approximately one tenth of a mile off of exit eighteen.

After the defendant moved his vehicle, Contreras again approached and asked the defendant if he had consumed any alcoholic beverages prior to driving. The defendant responded that he had consumed two beers. Contreras then asked the defendant if he would submit to standardized field sobriety tests, and the defendant agreed. Contreras noticed that the defendant was "unsteady on his feet" and "couldn't keep his balance" when he exited the vehicle. Before explaining the nature of the field sobriety tests, Contreras asked the defendant if he had any ailments that would impair his ability to perform the tests, and the defendant responded in the negative. Contreras first conducted the horizontal gaze nystagmus test,[1] during which he observed the lack of smooth pursuit in each eye, but did not observe the onset of nystagmus prior to forty-five degrees or at maximum deviation. Consequently, Contreras could not conclude that the defendant failed the test.

Contreras then administered the walk and turn test. He explained to the jury that there are a total of eight clues in the walk and turn test, and an individual who displays two or more clues is considered to have failed the test. The defendant exhibited seven clues, including losing his balance, starting too soon, and stopping during the test in order to prevent himself from falling. The defendant also failed the one leg stand test because he swayed while balancing, put down his foot several times, and raised his arms. Based on the totality of Contreras' observations, including the smell of alcohol and marijuana, the field sobriety tests, and the defendant's speech and unsteadiness on his feet, Contreras concluded that the defendant was impaired. Contreras then arrested him for operating a motor vehicle while under the influence of alcohol or drugs or both.

Contreras informed the defendant of his constitutional rights and brought him to the police station for processing. In response to questioning, the defendant stated that between 5 p.m. and 9 p.m. he had consumed two beers and had smoked a marijuana joint prior to driving. The defendant submitted to a Breathalyzer test at approximately 10:41 p.m. that measured his blood alcohol content at 0.0352 percent, which is below the legal limit of 0.08. See General Statutes § 14-227a (a) (2). Nevertheless, on the basis of Contreras' observations, the state charged the defendant with operating a motor vehicle while under the influence of intoxicating liquor or drugs or both.[2]

Following a jury trial, the jury returned a verdict finding the defendant guilty of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both. The trial court rendered a judgment of conviction in accordance with the jury's verdict and sentenced the defendant to a total effective sentence of six months incarceration, execution suspended after twenty days, two days of which were the mandatory minimum, followed by two years' probation with special conditions. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence adduced at trial was insufficient to sustain his conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs. Specifically, he argues that alleged evidentiary inconsistencies made it unreasonable for the jury to conclude beyond a reasonable doubt that he drove his vehicle while under the influence of intoxicating liquor or drugs such that his mental, physical or nervous processes were so affected that he lacked the ability to operate his vehicle properly in violation of § 14-227a (a) (1). We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence

in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Stovall*, 316 Conn. 514, 520, 115 A.3d 1071 (2015).

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty."[3] (Internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 490, 698 A.2d 898 (1997).

Section 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both . . . ." Thus, pursuant to § 14-227a (a) (1), "[a] conviction of operating a motor vehicle while under the influence of intoxicating liquor [or any drug or both] . . . requires proof [beyond a reasonable doubt] of (1) operation of a motor vehicle (2) on a public highway or one of the other designated areas (3) while under the influence of intoxicating liquor [or any drug or both]. . . . Driving while under the influence of liquor means, under the law of Connecticut, that a driver had become so affected in his mental, physical or nervous processes that he lacked to an appreciable degree the ability to function properly in relation to the operation of his vehicle." (Citation omitted; internal quotation marks omitted.) *State* v. *Howell*, 98 Conn. App. 369, 374–75, 908 A.2d 1145 (2006).

The defendant does not contest that he was operating a motor vehicle on a public highway or that he had alcohol in his bloodstream. The defendant argues that there was insufficient evidence to prove that his consumption of alcohol, marijuana or both so affected his mental, physical or nervous processes that he lacked, to an appreciable degree, the ability to function properly in relation to the operation of his vehicle. He contends that several reasons unrelated to intoxication caused him to cross the fog line, make an unsafe lane change, and fail two field sobriety tests. He notes that Contreras failed to ask him if he had any medical issues which prevented him from performing the walk and turn test

and the one leg stand test. The defendant argues that he was cooperative and polite throughout the process; that Contreras could not recall whether the defendant had any difficulty producing documentation, answering questions or comprehending instructions; that he was able to drive his vehicle without incident when Contreras ordered him to change locations; and that he passed the horizontal gaze nystagmus test, which was a scientific test, unlike the walk and turn test and one leg stand test, which are subjective in nature. The defendant further argues that although his admission to having consumed marijuana is sufficient to establish drug use prior to operation, it does not prove that he was impaired while driving.

Although the jury could have accepted the defendant's view of the evidence, it was not required to do so. The jury had more than sufficient evidence to support the defendant's conviction. Contreras testified that he observed the defendant having difficulty maintaining his lane and crossing over the fog line several times while driving. Contreras further testified that when the defendant lowered the passenger side window, he immediately noticed the smell of alcohol and marijuana, and that the defendant was speaking slowly and in a monotone voice. The defendant admitted to Contreras that he had consumed two beers and had smoked marijuana prior to driving. Contreras noticed that after the defendant exited his vehicle, he was "unsteady on his feet" and "couldn't keep his balance." During the walk and turn test, the defendant exhibited seven out of eight clues indicative of impairment, and he exhibited three out of four clues of impairment during the one leg stand test. Although the defendant did not fail the horizontal gaze nystagmus test, he exhibited a lack of smooth pursuit. State Trooper Tom Ehret, the state's drug recognition expert, testified that a person who was under the influence of marijuana would only exhibit a lack of smooth pursuit but not the onset of nystagmus prior to forty-five degrees or at maximum deviation in the nystagmus test. Ehret also testified that the walk and turn test and the one leg stand test were "good tests for marijuana because they are divided attention tests." The evidence supports the jury's verdict of guilty.

The defendant's argument that Contreras failed to ask him if he had any physical ailments preventing him from performing the walk and turn test and the one leg stand test is unavailing. Contreras testified that before administering the field sobriety tests and prior to informing the defendant of the nature of those tests, he asked the defendant if he had any physical ailments or injuries to which the defendant responded negatively. Contreras testified that "at that point [the defendant] could be under the impression that he's going to be doing cartwheels, and if he doesn't tell me he has any physical injuries or aliments, then . . . it's telling me . . . that he doesn't have any ailments to do a vari-

ety of tests that I would perform on the side of the road."

Furthermore, the jury was not required to accept the defendant's view that there could be explanations other than intoxication for his poor performance on the field sobriety tests, or that evidence of his cooperation throughout the process proved that he was not intoxicated. "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Pulaski*, 71 Conn. App. 497, 505, 802 A.2d 233 (2002). Accordingly, we conclude that there is a reasonable view of the evidence to support the jury's verdict of guilty and the judgment of conviction.

## II

The defendant next claims that the court abused its discretion in a number of ways regarding the admission of the testimony of Ehret, the state's drug recognition expert. He contends that the court abused its discretion by (a) failing to conduct a hearing, prior to admitting Ehret's testimony pursuant to *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), and *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), (b) concluding that Ehret's testimony was relevant, (c) permitting Ehret to answer a hypothetical question, and (d) permitting Ehret to estimate a blood alcohol content equivalent based on a person's use of marijuana in conjunction with alcohol. We disagree with each of the defendant's claims.

The following additional facts are relevant to the defendant's claims. On March 10, 2016, the defendant filed a motion in limine in which he sought to preclude the testimony of Ehret on relevancy grounds. He argued that Ehret's testimony was not relevant under § 4-1 of the Connecticut Code of Evidence because he was not the arresting officer, was not present at the scene to observe the defendant perform the field sobriety tests, was not the processing officer, and did not observe the defendant on the day of his arrest or at any other time. He further argued that Ehret's testimony should be excluded under § 4-3 of the Connecticut Code of Evidence as confusing and a waste of time. The defendant did not cite *Porter* or *Daubert*, nor did he argue that Ehret's testimony was scientifically unreliable.

On March 14, 2016, the first day of trial, the defendant argued, in support of his motion in limine, that Ehret's testimony was not relevant because he did not observe the defendant on the day of his arrest. In response, the

prosecutor explained that Ehret was not being called to testify as to the defendant's condition, but instead would testify as to the effect that the combination of alcohol and marijuana would have on the body and how that differs from how alcohol alone affects the body. The court concluded: "If . . . Ehret were testifying that in his opinion, [the defendant] were intoxicated within the meaning of the statute . . . I would agree that his testimony would be inadmissible. But given [the prosecutor's] proffer, namely that . . . Ehret possesses specialized training and experience outside of the ordinary knowledge of the lay juror and that that testimony will be limited to the effects of alcohol and/ or marijuana in combination, I believe that his testimony, A, is relevant, and B, is admissible to explain the effects of alcohol and marijuana in combination on a driver, albeit not [the defendant] in particular. So accordingly, the defendant's motion to preclude the testimony of . . . Ehret is denied."

After Ehret testified regarding his specialized training in drug recognition, the court found him to be an expert. Ehret then testified as to the effects that the combination of a low level of alcohol and a low to moderate level of marijuana would have on the body. He noted that under such conditions, an individual would display only one of the three clues, a lack of smooth pursuit, during the horizontal gaze nystagmus test. Nevertheless, he testified that an individual with a low blood alcohol content who also had marijuana in his system would display more clues during the one leg stand test and the walk and turn test than would an individual who had only a low blood alcohol content. Thereafter, the following exchange occurred between Ehret and the prosecutor:

"[The Prosecutor]: Okay. Now, have you read any literature about the effect of both moderate levels of marijuana and moderate levels of alcohol in someone's system?

"[Ehret]: Yeah. The National Highway Traffic Safety Administration did a study in either 1999 or 2000 with . . . the University of the Netherlands and . . . basically what it said is if there are low levels of marijuana combined with low levels of alcohol, the effect together could create an impairment of what they approximated as anywhere from 0.09 to 0.16 [blood alcohol content] level if it was just alcohol alone.

"[The Prosecutor]: Okay. And I'm going to pose a hypothetical question to you. Assume a man was pulled over in the evening and assume that . . . when he was pulled over, he smelled of alcohol and the scent of marijuana, assume he had slow speech and lethargic speech, assume he was off balance and unsteady on his feet when he walked toward the end of his vehicle, and assume he further failed the walk and turn and the one [leg] stand [tests]. Assume he admitted to you he

consumed two beers and smoked a joint before driving. He did submit to a Breathalyzer revealing a 0.035. . . . What would you conclude from those facts?"

"[Defense Counsel]: Objection, Your Honor.

"[The Court]: Overruled.

"[Ehret]: Based on the facts that you set forth there, I would determine that person was impaired."

We begin by setting forth the standard of review. "We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Acosta*, 162 Conn. App. 774, 780, 129 A.3d 808 (2016), aff'd, 326 Conn. 405, 164 A.3d 672 (2017). We address the defendant's claims in turn.

### A

The defendant claims that the court erred in failing to conduct a *Porter* hearing before admitting Ehret's drug recognition testimony. The defendant acknowledges that he did not specifically request that the trial court conduct a *Porter* hearing but he contends, however, that his motion in limine, in which he argued that Ehret's testimony was not relevant because he did not personally observe the defendant, combined with the trial court's gatekeeping functions, triggered an obligation of the trial court to hold a *Porter* hearing. We decline to review this claim.

Because the defendant did not raise a *Porter* claim in the trial court, the claim is unpreserved for appellate review. "To raise a *Porter* claim, the party opposing the admission of the scientific evidence must first object to the validity of the expert's methods. . . . Once the opponent objects, the proponent of the scientific evidence must demonstrate that the methods underlying the evidence are reliable and, therefore, valid. . . . The failure to raise a *Porter* claim in the trial court results in waiver of that claim and it will not be considered for the first time on appeal." (Citations omitted.) *Weaver* v. *McKnight*, 313 Conn. 393, 415–16, 97 A.3d 920 (2014).

In the present case, the defendant filed a motion in limine challenging the admission of Ehret's testimony on relevancy grounds only. When the court addressed the motion on the first day of trial, the defendant argued that Ehret did not personally observe the defendant on the night of his arrest and therefore Ehret's opinions were not relevant. He neither argued that Ehret's methods were scientifically unreliable,[4] nor requested that the trial court hold a *Porter* hearing on the scientific

validity of Ehret's testimony. "As the sine qua non of preservation is fair notice to the trial court"; (internal quotation marks omitted) *State* v. *Rivera*, 169 Conn. App. 343, 371, 150 A.3d 244 (2016), cert. denied, 324 Conn. 905, 152 A.3d 544 (2017); we conclude that this claim was not preserved and is therefore unreviewable.

The defendant, alternatively, seeks review under the plain error doctrine. See Practice Book § 60-5. The defendant argues that it readily is discernable from the record that the methods Ehret used to formulate his opinions, namely without personally observing the defendant, were scientifically invalid and so harmful as to require reversal. We disagree.

Pursuant to Practice Book § 60-5, the plain error doctrine "is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, a] defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Terry*, 161 Conn. App. 797, 820, 128 A.3d 958 (2015), cert. denied, 320 Conn. 916, 131 A.3d 751 (2016).

The defendant's argument ignores the basis for the court's denial of the defendant's motion in limine. The court denied the motion because Ehret was not being offered to testify as to the defendant's level of intoxication. He was offered only to explain the combined effects of marijuana and alcohol on a driver. We see no error in permitting his testimony on this subject, let alone plain error. Certainly, the court's failure to conduct a *Porter* hearing sua sponte on the facts of this case is not the type of extraordinary situation for which plain error review is reserved.

B

The defendant next claims that the court abused its discretion in concluding that Ehret's testimony was relevant. Specifically, the defendant argues that, because Ehret did not personally observe the defendant on the

night of his arrest, his testimony was irrelevant. We disagree.

Section 4-1 of the Connecticut Code of Evidence provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." "As it is used in [the Connecticut Code of Evidence], relevance encompasses two distinct concepts, namely, probative value and materiality. . . . Conceptually, relevance addresses whether the evidence makes the existence of a fact material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . In contrast, materiality turns upon what is at issue in the case, which generally will be determined by the pleadings and the applicable substantive law. . . . If evidence is relevant and material, then it may be admissible. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Sampson*, 174 Conn. App. 624, 635–36, 166 A.3d 1, cert. denied, 327 Conn. 920, 171 A.3d 57 (2017).

The court did not abuse its discretion in ruling that Ehret's testimony was relevant. In this case, Ehret did not opine as to whether the defendant himself, was under the influence of alcohol or marijuana. Instead, he testified, as an expert witness concerning the physical effects of marijuana on the body and the effects that the combination of marijuana and alcohol could have on a person's performance of field sobriety tests. His testimony included answering a hypothetical question based on facts similar to those presented to the jury through Contreras' testimony. Consequently, his testimony in no way required personal observation of the defendant to be relevant. Even without such observation, his testimony had a tendency to make the existence of a material fact——whether the defendant was impaired by the combination of alcohol and marijuana—more or less probable.

C

The defendant next claims that the court abused its discretion in permitting Ehret to answer the hypothetical question posed to him by the prosecutor. He argues that the hypothetical question was improper because it constituted an opinion on an ultimate issue in the case and the hypothetical failed to include all essential facts. We decline to review this claim.

At trial, the defendant made a general objection to the following hypothetical question: "Assume a man was pulled over in the evening and assume that . . . when he was pulled over, he smelled of alcohol and the scent of marijuana, assume he had slow speech and lethargic speech, assume he was off balance and

unsteady on his feet when he walked toward the end of his vehicle, and assume he further failed the walk and turn and the one [leg] stand [tests]. Assume he admitted to you he consumed two beers and smoked a joint before driving. He did submit to a Breathalyzer revealing a 0.035 . . . . What would you conclude from those facts?" He did not state a basis for the objection.

The defendant's failure to specify the grounds for his objection to the hypothetical question renders his evidentiary claim unreviewable on appeal. "The standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Gonzalez*, 272 Conn. 515, 539–40, 864 A.2d 847 (2005).

Because the defendant did not state a basis for the objection, the court had no opportunity to consider the arguments the defendant now makes on appeal. Furthermore, the state did not have the opportunity to respond to the arguments, reformulate the question or present additional evidence if the objection had been properly argued and sustained. For these reasons, we will not review the defendant's claim.

D

Finally, the defendant claims that Ehret's testimony regarding the resultant blood alcohol content of an individual who had consumed low levels of marijuana and alcohol violated § 14-227a.

Section 14-227a (c) provides that in any prosecution under the behavior subdivision "reliable evidence respecting the amount of alcohol in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's blood, breath or urine, otherwise admissible under subsection (b) of this section, shall be admissible only at the request of the defendant."

During cross-examination of Contreras, the defendant elicited testimony that a Breathalyzer test revealed

that the defendant's blood alcohol content at 10:41 p.m. on the night he was arrested was .0352, and offered the Breathalyzer test results into evidence. During direct examination of Ehret, the prosecutor asked if he had read any literature regarding the effects of moderate levels of marijuana and moderate levels of alcohol. Ehret testified regarding a study that indicated that the effect of low levels of both intoxicants on an individual would be equivalent to the effect of a blood alcohol content between 0.09 and 0.16. The defendant neither objected to the state's question, nor moved to strike Ehret's answer.

Because the defendant did not preserve this claim, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[5] and the plain error doctrine. First, the claim fails under the second prong of *Golding* because it is an evidentiary claim that is not of constitutional magnitude. "[U]npreserved [e]videntiary claims do not merit review pursuant to *Golding* . . . because they are not of constitutional magnitude." (Internal quotation marks omitted.) *State* v. *Terry*, supra, 161 Conn. App. 819. Accordingly, we will not review the defendant's evidentiary claim under *Golding*. Second, the defendant has not demonstrated that the claimed error is both so clear and so harmful that reversal is required pursuant to the plain error doctrine. Section 14-227a (c) prohibits the *state* only from offering into evidence the defendant's blood alcohol content at the time of the offense. In this case, it was the defendant who introduced the Breathalyzer test results. By doing so, the defendant opened the door to questioning about those results. Furthermore, Ehret did not testify to the defendant's blood alcohol content at the time of the incident, but rather he discussed in general terms the effect that low levels of marijuana and alcohol have on an individual, and how that would compare to a blood alcohol content that measures the effects of alcohol alone. The defendant has not demonstrated that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. See *State* v. *Terry*, supra, 820.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 770 n.3, 970 A.2d 108 (2009).

[2] The defendant was charged only under § 14-227a (a) (1), the behavior subdivision of the statute. The defendant also was charged with failure to drive within the proper traffic lane in violation of General Statutes § 14-236 (1). The court found the defendant guilty of this infraction and imposed a $50 fine.

[3] Although the defendant's second claim challenges the admissibility of certain evidence, "[f]or the purposes of sufficiency review . . . we review

the sufficiency of the evidence as the case was tried . . . . [A] claim of insufficiency of the evidence must be tested by reviewing no less than, and no more than, the evidence introduced at trial." (Internal quotation marks omitted.) *State* v. *Chemlen*, 165 Conn. App. 791, 816, 140 A.3d 347, cert. denied, 322 Conn. 908, 140 A.3d 977 (2016).

[4] The defendant's objection to Ehret's testimony stands in marked contrast to his objection to the proposed testimony of the state's toxicology expert. In the context of his motion in limine seeking to preclude the admission of a toxicology report and testimony from the toxicologist regarding the drug screening test results of a urine sample from the defendant, which revealed the presence of cannabinoids in his system, the defendant argued that the test results were scientifically unreliable under *Porter* and *Daubert*. The court granted the motion and concluded that the testimony of the toxicologist and the toxicology report regarding the testing of the defendant's urine sample did not satisfy the requirements of *Porter*. As noted previously, the defendant did not raise a *Porter* claim in his motion in limine regarding Ehret's testimony.

[5] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Dixon*, 318 Conn. 495, 511, 122 A.3d 542 (2015); see also *In re Yasiel*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding*).